**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,**
Appellant

v.

**GEORGE V. HAMILTON,**
**INC., Appellee.**

No. 08–4733.

United States Court of Appeals, Third Circuit.

Argued May 21, 2009.

Filed: July 6, 2009.

Peter B. Skeel, Esq., Summers, McDon-nell, Hudock, Guthrie & Skeel, LLP, Pitts-

burgh, PA, Rolf E. Gilbertson, Esq., [Ar-gued], Eric E. Caugh, Esq., Christopher R. Paar, Esq., Kathryn M. Hoffman, Esq., Zelle Hofmann Voelbel & Mason LLP, Minneapolis, MN, Counsel for Appellant.

Frederick J. Francis, Esq., [Argued], Joseph E. Linehan, Esq., Richard T. Victo-ria, Esq., Meyer, Unkovic & Scott LLP, Pittsburgh, PA, Counsel for Appellee.

Before: FUENTES, JORDAN and NYGAARD, Circuit Judges.

OPINION OF THE COURT

JORDAN, Circuit Judge.

Nationwide Mutual Fire Insurance Com-pany ("Nationwide")[1] appeals the order of the United States District Court for the Western District of Pennsylvania granting appellee George V. Hamilton, Inc. ("Ham-ilton") summary judgment and dismissing Nationwide's motion to compel arbitration. Nationwide challenges the District Court's determination that it was collaterally es-topped from seeking enforcement of a con-tractual arbitration clause because of a previous state court lawsuit to which Na-tionwide was not a party, and it further challenges the District Court's conclusion that, irrespective of estoppel, the federal action was duplicative of a pending action in state court and warranted abstention pursuant to doctrine laid down by the Su-preme Court in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). We conclude that the previous state court ruling does not preclude Na-tionwide, who was a nonparty and did not otherwise have its interests represented before the state court, from seeking to enforce the arbitration provision of its

---

1. This appeal was initially captioned *"Roe Co. v. Doe, Inc."* and documents filed in conjunc-tion with this appeal were initially filed under

seal. The parties have since agreed that seal-ing of this matter is no longer necessary.

agreement with Hamilton. We further conclude that the kind of extraordinary circumstances warranting abstention under *Colorado River* are not present here. We will therefore reverse and remand to the District Court to consider the merits of Nationwide's petition to compel arbitration.

## I. Background

Nationwide issued a single policy of liability insurance to Hamilton which provided Hamilton with coverage from January 30, 1985 to January 30, 1986. During the policy period, Hamilton, an installer of commercial and industrial insulation, received claims for asbestos-related injuries allegedly caused by products it had installed. In 1992, Hamilton and Nationwide, along with other carriers, including Pennsylvania Manufacturers' Association Insurance Company ("PMA"), entered into an Interim Claim Handling and Settlement Agreement (the "Settlement Agreement" or "Agreement"). The Settlement Agreement concerned the administration and allocation of defense and indemnity resources for claims under the various insurers' policies. Under the Agreement, an insurer's obligation to pay defense and indemnity costs continued until it could establish that it had exhausted its policy limits. Upon proof of exhaustion, that insurer was released by Hamilton and discharged from further obligation, and any remaining costs were allocated proportionally among the remaining insurers. It is undisputed that the Settlement Agreement included a three-year minimum term and that, following the expiration of the three-year term, the

Agreement could be terminated as to all parties by the withdrawal of any one party, so long as written notice, delivered by certified mail, was provided to all parties 90 days in advance of the termination date.

Nationwide participated in the Settlement Agreement until early 1996, when it claimed to have exhausted its policy limits and provided proof of exhaustion to both Hamilton and its fellow carriers.[2] On May 5, 1997, Hamilton stated that it was "willing to accept the evidence of exhaustion" supplied by Nationwide. While the parties dispute whether Nationwide was then released from any obligation to defend or indemnify Hamilton, it is undisputed that Nationwide did not participate in Hamilton's defense or pay further indemnification after 1997.[3]

In addition to setting the insurers' obligations with regard to indemnity and defense, the Settlement Agreement included an arbitration clause providing that "the PARTIES agree that any and all disputes arising out of, or relating to this Agreement, or breach thereof, shall be decided by nonjudicial arbitration which shall be binding on the parties [sic] in accordance with 42 Pa. U.P.S.A., Section 7341. Notice of the demand for arbitration shall be served in writing upon all other PARTIES to this Agreement."[4]

On January 5, 2005, PMA filed a complaint (the "PMA Action") in the Court of Common Pleas of Allegheny County, Pennsylvania, seeking a declaratory judgment against Hamilton and several insurers other than Nationwide. PMA contended that it had exhausted its policy limits under

---

**2.** At oral argument, Hamilton conceded that Nationwide had exhausted its policy limits with regard to product coverage but not with regard to its premises coverage.

**3.** The record is unclear as to whether Nationwide made any payments from May 5, 1997 thru the end of 1997.

**4.** "PARTIES" is defined to include all signatories to the Settlement Agreement.

various umbrella policies it had written for Hamilton and that it therefore had no further obligation to Hamilton. Five days later, PMA served Hamilton with an arbitration demand under the Settlement Agreement. PMA did not serve Nationwide with a copy of the arbitration demand, as required under the terms of the Settlement Agreement. Hamilton rejected the demand on March 29, 2005. In addition to declining the arbitration demand, Hamilton responded to PMA's complaint in the Court of Common Pleas. It filed a New Matter and Counterclaim against PMA, asserting various claims for breach of contract and bad faith and arguing that PMA had a duty to defend and indemnify it for asbestos related claims under PMA's primary policy, which was subject to the Settlement Agreement, and other umbrella policies which were not subject to the Settlement Agreement. PMA filed preliminary objections [5] to the counterclaims before the Court of Common Pleas, contending that the counterclaims were controlled by the Settlement Agreement and should be dismissed in light of the arbitration clause.

Three years later, on May 20, 2007, the Court of Common Pleas issued an order sustaining PMA's objections, but the Court stated that it would "vacate [its] ... order and overrule the preliminary objections if within ten (10) days ... Hamilton sends a notice of withdrawal from the [Settlement A]greement." (App.350A–C.) The Court further stated that:

> I agree with Hamilton if Hamilton is saying that it is not required to arbitrate pursuant to paragraph 21 [of the Settlement Agreement] if it elects to terminate the Agreement at this time.

However, I disagree with Hamilton if Hamilton is taking the position that it is not bound by the arbitration clause even though it chooses not to terminate the Agreement. It cannot use some portions of the Agreement and disassociate itself from other portions of the Agreement.

(App.350.) On May 30, 2007, Hamilton responded by sending to Nationwide and the other Settlement Agreement signatories notice of its intent to withdraw from the Agreement. The Court of Common Pleas then, on June 22, 2007, granted Hamilton's motion to vacate and overruled PMA's objections to the counterclaims. The Court's June 22 Order, vacating its May 20 Order, did not state a basis for the vacatur nor did it recognize that, at a minimum, the Settlement Agreement required 90 days written notice for a withdrawal to be effective.

In addition to the suit initiated by PMA, a second Hamilton insurer, ACE Property & Casualty Co. ("ACE"), though it was not a party to the Settlement Agreement, also filed an action (the "ACE Action") against Hamilton and other insurers seeking declaratory relief regarding its duty to defend and indemnify Hamilton. Again, Nationwide was not made a party. The ACE Action was filed in the Court of Common Pleas of Philadelphia County on December 7, 2005, a year after the PMA Action began. In response to a defense motion, the court in Philadelphia transferred the case to the Court of Common Pleas in Allegheny County on July 25, 2006. The ACE action has since been coordinated with the PMA Action and both cases remain pend-

---

**5.** PMA's preliminary objections were filed pursuant to Rule 1028(a)(6) of the Pennsylvania Rules of Civil Procedure, which provides that "Preliminary objections may be filed by any party to any pleading and are limited to the following grounds: ... (6) pendency of a prior action or agreement for alternative dispute resolution."

ing.[6]

On June 7, 2007, a co-insurer defendant in the ACE Action filed a third-party complaint against Nationwide, marking the first time that Nationwide became a party in either the ACE or PMA Actions.[7] Nationwide filed its answer to the third-party complaint on August 10, 2007. On September 28, 2007, Hamilton filed an answer, new matter counterclaim and crossclaims. There were still no causes of action asserted by Hamilton against Nationwide.

On October 19, 2007, Hamilton tendered new asbestos-related claims to Nationwide and other insurers seeking indemnity and defense. The claims were Hamilton's first against Nationwide in the more than ten years since Nationwide had asserted exhaustion of its policy limits under the release and discharge provision of the Settlement Agreement. On February 4, 2008, Hamilton filed amended crossclaims in the ACE Action, including, for the first time, allegations against Nationwide. In its reply to Hamilton's amended crossclaims, Nationwide raised the arbitration provision of the Settlement Agreement as an affirmative defense but has not otherwise presented the arbitration issue to the state court. However, pursuant to the Settlement Agreement, Nationwide served Hamilton with an arbitration demand on April 1, 2008. Hamilton denied the demand, and Nationwide then filed this action in the United States District Court for the West-

ern District of Pennsylvania to compel arbitration. Soon thereafter, Hamilton moved to dismiss or for summary judgment, and, on November 8, 2008, the District Court granted the summary judgment motion.

In granting Hamilton's motion, the District Court determined that, as a result of a ruling by the Court of Common Pleas in the PMA Action, Nationwide was collaterally estopped from invoking the arbitration clause in the Settlement Agreement. The Court reasoned that Nationwide was in privity with PMA and shared an "identity of interest in enforcing the arbitration agreement." (App.13.) As an alternative basis for its ruling, the District Court cited the *Colorado River* abstention doctrine, finding that the state and federal proceedings were parallel and that "exceptional circumstances" warranting abstention were present, despite the "strong federal policy in favor of upholding arbitration agreements" and the general rule that the "FAA does not favor abstention." (App.17, 18.) Nationwide timely appealed the District Court's order, contesting the Court's rulings on both collateral estoppel and abstention.[8]

## II. Jurisdiction and Standard of Review

■■■■ The District Court had jurisdiction under 28 U.S.C. § 1332. We have

---

**6.** The actions were coordinated under Rule 213.1 of the Pennsylvania Rules of Civil Procedure which provides that, upon a motion from a party, actions involving "common question of law or fact or which arise from the same transaction or occurrence" may be coordinated and the coordinating court may "(1) stay any or all of the proceedings in any action subject to the order, or (2) transfer any or all further proceedings in the actions to the court or courts in which any of the actions is pending, or (3) make any other appropriate order."

**7.** The complaint against Nationwide asserted claims by American Guarantee & Liability Insurance Co. for declaratory judgment and contribution with regard to amounts paid to defend and indemnify Hamilton.

**8.** Coordinated discovery remains ongoing before the Court of Common Pleas in the PMA and ACE Actions, and Nationwide is actively defending against Hamilton's cross-claims.

jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's decision regarding collateral estoppel. *See Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252 (3d Cir.2008) (citation omitted). In reviewing a decision to abstain under the *Colorado River* doctrine, we exercise plenary review over legal questions, including the determination of whether the proceedings in state and federal court are properly considered "parallel". *See Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir.1997). If the proceedings are parallel, we review for abuse of discretion a district court's decision to abstain; although, "to the extent the district court evaluated a factor based on an erroneous view of the law, it necessarily abused it discretion and [appellate] review becomes plenary." *Id.*

## III. Discussion

The District Court decided that there is a sufficient identity of interests between Nationwide and PMA that PMA can be said to have adequately represented Nationwide in the PMA Action and that, accordingly, the two insurers are in privity for estoppel purposes. Nationwide understandably takes exception to that ruling, and we agree that estoppel was inappropriate. Nationwide and PMA were not in privity because PMA was not Nationwide's legal representative, nor do the two companies have any other relationship warranting the conclusion that they were in privity. Indeed, at the time of the state court's ruling in the PMA Action, Nationwide's interests were not even adverse to Hamilton's and so cannot rightly be said to have been aligned with PMA's.[9]

Nationwide also objects to the District Court's conclusion that abstention pursuant to the *Colorado River* doctrine provides an independent basis for dismissal. Again, we agree and conclude that the District Court erred in determining that the instant case presents extraordinary circumstances that warrant abstention. Because the question of abstention is jurisdictional and would dispose of the matter in its entirety, we address it first.

### A. Abstention

██ The *Colorado River* doctrine allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The doctrine is to be narrowly applied in light of the general principle that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); *see also Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236 ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.") (internal quotation omitted). Whether abstention is appropriate is a two-part inquiry. The initial question is whether there is a parallel state proceeding that raises "substantially identical claims [and] nearly identical allegations and issues." *Yang v. Tsui*, 416 F.3d 199, 204 n. 5 (3d Cir.2005) (internal quotation and citation omitted). If the proceed-

---

**9.** In addition to contesting the District Court's determination regarding privity, Nationwide also contests the finality of the Court of Common Pleas's ruling on arbitration. Our con-

clusion that there is no privity between the parties obviates any need to consider the finality of the state court ruling, and we do not address that issue.

ings are parallel, courts then look to a multi-factor test to determine whether "extraordinary circumstances" meriting abstention are present. *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir.1999). We need not take up the parallel action analysis here because, even presuming parallelism, this action does not present the type of circumstances warranting abstention.

■ In determining whether an action presents "extraordinary circumstances" we consider six factors: "(1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Spring City*, 193 F.3d at 171.[10] "No one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236. The balancing of factors is "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■■ Of primary importance with regard to this case are the third and fourth factors. As the parties concede, the first two factors are irrelevant, as this is not an *in rem* action and the federal forum is convenient for both parties. The fifth and sixth factors also carry little weight here.

The fifth factor is relatively neutral, given that the Federal Arbitration Act (the "FAA") governs the enforceability of the arbitration clause but a choice of law clause provides that Pennsylvania law governs the Settlement Agreement. The sixth factor does not significantly inform the analysis because the FAA grants concurrent jurisdiction to federal and state courts and thus expressly contemplates the state court as an adequate forum for adjudication. *See Spring*, 193 F.3d at 172 ("[T]he question whether parties' interests are protected is only relevant when they are not; that is, 'when the state court is adequate, ... [this] factor carries little weight.'") (quoting *Ryan*, 115 F.3d at 199, 200).

■ The third and fourth factors, however, weigh heavily against abstention. The third factor, the desirability of avoiding piecemeal litigation, was "[b]y far the most important factor" in the *Colorado River* decision itself. *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. 927. By definition, it is an inquiry into whether avoiding piecemeal litigation is a priority contemplated by the statute, regulation, or other authority at issue. *Spring*, 193 F.3d at 172 (third factor satisfied only where the law in question evinces a "strong federal policy against [such] litigation."). In this instance, rather than containing a strong policy against piecemeal litigation, the FAA has a policy in favor of it, at least to the extent necessary to preserve arbitration rights, as the Supreme Court made clear in *Moses H. Cone*. The Court considered whether abstention was appropriate when there was a federal action to compel

---

10. Only the first four of these factors were delineated in *Colorado River*, the other two are drawn from *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23, 26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("Besides the four factors expressly discussed in *Colorado River*, there is another that emerges ... the fact that federal law provides the rule of decision on the merits"; "an important reason against allowing a stay is the probable inadequacy of the state-court proceeding to protect Mercury's rights.").

arbitration under a contract at the same time that there was a state court action seeking a declaration that there was no contractual right to arbitration. 460 U.S. at 1, 103 S.Ct. 927. The state court case also contained disputes between the federal defendant and a third party, a fact which the defendants claimed militated in favor of abstention due to the potential for piecemeal adjudications. *Id.* The Supreme Court rejected that argument, concluding that:

> It is true … that if [plaintiff] obtains an arbitration order for its dispute, the [defendant] will be forced to resolve these related disputes in different forums. That misfortune, however, is not the result of any choice between the federal and state courts; it occurs *because the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement.* Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.

*Id.* at 20–21, 103 S.Ct. 927 (emphasis added). The circumstances presented in *Moses H. Cone* are analogous to those before us. While not all parties in the ACE Action are covered by the arbitration agreement between Nationwide and Hamilton, and enforcement of the arbitration agreement may result in separate adjudications, that is an insufficient basis for the District Court to decline jurisdiction. Because the FAA requires piecemeal litigation where necessary, irrespective of any concomitant decline in judicial efficiency, this critical factor weighs against abstention.

▮ The fourth factor, the order in which jurisdiction was obtained, also counsels against abstention. Although the PMA and ACE Actions were both filed prior to Nationwide's initiation of this suit, we must consider more than which action was filed first. *See Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. 927 (defendants first filed argument "gives too mechanical a reading to the 'priority' element of the *Colorado River* balance"). The comparative progress made in the state cases and this one also needs to be considered. *Id.* at 22, 103 S.Ct. 927. Although there has been significant progress in the state cases with regard to Hamilton's crossclaims against Nationwide and the other insurers, consideration of the arbitration issue is not so far advanced. It has been raised only in Nationwide's response to the crossclaims and has not otherwise been litigated before the Court of Common Pleas. On this record, it does not appear that there will be much, if any, duplicative judicial effort in allowing the arbitration issue to proceed in the federal forum where the parties have already been litigating it. *See Moses H. Cone,* 460 U.S. at 22 n. 26, 103 S.Ct. 927 (observing that because the parties had submitted extensive briefing on the arbitrability issue, "[i]t is readily apparent that if the District Court had denied the stay, it doubtless could and should have gone on to decide the arbitrability point in very short order.").

▮ On balance, the relevant factors weigh against abstention.

### B. Collateral Estoppel[11]

▮ Because the District Court had jurisdiction and should have exercised it, the question becomes whether collateral

---

11. While it has been suggested that "issue preclusion" has replaced the term "collateral estoppel," *Taylor v. Sturgell,* 128 S.Ct. 2161, 2171 n. 5 (2008), the latter term is still very much in use, including by the parties and District Court in this case. We think it would be more confusing to work around so well-worn a phrase, so we use it too.

estoppel applies against Nationwide's demand for arbitration. There is no dispute that Pennsylvania law on collateral estoppel governs in this diversity action. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001) (holding that the preclusion law to be applied is that of "the State in which the federal diversity court sits."). Under Pennsylvania law, the following conditions must be satisfied for collateral estoppel to bar a subsequent claim: (1) the issue decided in the prior case must be identical to the one presented in the later case; (2) there was a final judgment on the merits in the prior action; (3) "[t]he party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action"; and (4) "[t]he party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action." *Rue v. K–Mart Corp.*, 552 Pa. 13, 713 A.2d 82, 84 (1998).[12] The parties agree, as do we, that Pennsylvania law is "not inconsistent" with federal decisions on collateral estoppel and privity, and we therefore consider our own precedent to be persuasive in addressing collateral estoppel questions arising under Pennsylvania law. *Cf. First Options of Chicago, Inc. v. Kaplan*, 913 F.Supp. 377, 384 n. 8 (E.D.Pa.1996) ("State law requirements for res judicata and privity are not inconsistent with the federal law applied by [the Court of Appeals for the Third Circuit].").

■ Collateral estoppel operates to bar "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination." *New Hampshire v. Maine*, 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Prohibiting parties from going to court again after they have had a full opportunity to litigate guards against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Estoppel, however, is limited by the due process principle that "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996) (citation omitted). Thus there is generally a bar against applying collateral estoppel to those who were not parties in the prior litigation.

■ A well-established exception to that bar exists when the nonparty is in privity with someone who was a party to the prior suit. *Richards*, 517 U.S. at 798–99, 116 S.Ct. 1761. While simply stated, the exception can prove difficult in application because, as Pennsylvania courts have noted, "'[p]rivity' is a term which the courts have never been able to define satisfactorily." *Ammon v. McCloskey*, 440 Pa.Super. 251, 655 A.2d 549, 553 (1995). Indeed, the efforts at definition have been notably circular.[13] For example, privity

---

**12.** Pennsylvania courts will occasionally frame the test as a five-factor test, adding the requirement that "the determination in the prior proceeding was essential to the judgment." *Yamulla Trucking & Excavating Co., Inc. v. Justofin*, 771 A.2d 782, 786 (Pa.Super.2001).

**13.** We have observed that "privity states no reason for including or excluding one from the estoppel of a judgment. It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." *Collins v. E.I. DuPont de Nemours & Co.*, 34 F.3d 172, 176

has traditionally been understood as referring to the existence of a substantive legal relationship, such as by contract, from which it was deemed appropriate to bind one of the contracting parties to the results of the other party's participation in litigation. *Taylor,* 128 S.Ct. at 2172 n. 8. Sometimes privity is referred to as a mutual or successive right or interest in the same property. *See Greenway Ctr. Inc. v. Essex Ins. Co.,* 475 F.3d 139 (3d Cir.2007). Over time, the definition of privity has loosened to the point that the word is now used as "a way to express the conclusion that nonparty preclusion [i.e. collateral estoppel] is appropriate on any ground." [14] *Taylor,* 128 S.Ct. at 2172 n. 8. During the course of that definitional loosening, the term "virtual representation," employed here by the District Court, has come into usage.

■ Under the "virtual representation" version of privity, a nonparty may be estopped in a second action where a party acted as the "virtual representative of the non-party," meaning that "there is such an identification of interest between the two as to represent the same legal right." *Collins,* 34 F.3d at 176 (citations omitted). [15] Caselaw from courts within our Circuit has provided conflicting statements regarding "virtual representation" as an exception to the bar against nonparty collateral estoppel. *Compare First Options,* 913 F.Supp.

at 385 n. 11 (stating that while some courts have required that a prior legal relationship exist between the party and nonparty, "[r]ather than requiring the legal obligation or accountability in all circumstances, however, the cases are better read as indicating that such a relationship is but one factor that will push mere sharing of parallel interests, into privity for res judicata or collateral estoppel purposes") *with Collins v. E.I. DuPont de Nemours & Co.,* 34 F.3d 172, 176 (3d Cir.1994) ("Virtual representation does not mean merely that someone in the suit serves the interests of the person outside the suit. It requires a relationship by which the party in the suit is the legally designated representative of the non-party.... A pre-existing legal relationship is not only a sufficient condition for privity, it is also a necessary one."). [16] But, as *Collins* indicates, our own precedent has been to require a preexisting legal relationship between those contending over privity, before lifting the bar against collateral estoppel. "The scope of privity, while largely freed from the very constrictive common law mutuality anchor, remains small." *Collins,* 34 F.3d at 176.

That approach was recently vindicated when the Supreme Court considered the soundness of the virtual representation doctrine and the meaning of the term "privity." In *Taylor v. Sturgell,* 128 S.Ct. 2161 (2008), [17] the Court considered a decision by the United States Court of Ap-

<hr>

(3d Cir.1994) (quoting *Bruszewski v. United States,* 181 F.2d 419, 423 (3d Cir.1950) (Goodrich, J., concurring)).

**14.** The Supreme Court has found "privity" so elastic a word that it has tried to avoid using it altogether, in an effort to "ward off confusion". *Taylor,* 128 S.Ct. at 2172 n. 8.

**15.** The Pennsylvania Supreme Court has not addressed the issue of virtual representation outside of the traditional context, where there is a prior legal representative relationship between a party and nonparty.

**16.** *Collins* involved an analysis of New Jersey privity law, which is not significantly distinguishable from that of Pennsylvania. *See e.g., State v. Gonzalez,* 75 N.J. 181, 380 A.2d 1128, 1132 (1977) (setting forth requirements for issue preclusion).

**17.** While *Taylor* concerned federal preclusion law, it is nonetheless highly persuasive here, given the close similarity between Pennsylvania law and federal common law on this topic.

peals for the District of Columbia Circuit that precluded Taylor from filing a suit under the Freedom of Information Act. The basis of the Court of Appeals decision was that a third party, with whom Taylor had no legal relationship, had previously filed an unsuccessful suit on the same theory and facts advanced by Taylor. *Id.* at 2167. The D.C. Circuit concluded that the third party was Taylor's "virtual representative" in the prior action. In rejecting that conclusion, the Supreme Court stated emphatically that "[w]e disapprove the doctrine of preclusion by 'virtual representation.'" *Id.* The Court specifically rejected the argument, advanced by Appellees and adopted by the District Court in this case, that preclusion exists where "the relationship between a party and a non-party is 'close enough' to bring the second litigant within the judgment." *Id.* at 2174–75. Application of such a standard would require a "diffuse balancing test" at odds with the preferred "constrained approach to nonparty preclusion." *Id.* at 2175.[18] In addition, such a liberal "virtual privity" doctrine would defy the limitations on nonparty preclusion established by the requirement that the party adequately represent the interests of the nonparty. *Id.* (citing *Richards*, 517 U.S. at 801–02, 116 S.Ct. 1761).

█ Accordingly, in line with *Taylor*, and for the reasons articulated therein, we reject the notion of "virtual representation" as an exception to nonparty collateral estoppel to the extent it embraces anything more than the understanding that privity requires a prior legal or representative relationship between a party to the prior action and the nonparty against whom estoppel is asserted. Without such

a relationship, there can be no estoppel. *Collins*, 34 F.3d at 176. Hence, the very use of the term "virtual representation" is suspect. *Cf. Taylor*, 128 S.Ct. at 2178 ("[D]ropping the 'virtual representation' label would lead to clearer analysis...."). In so concluding, we recognize that we are without the benefit of express guidance from the Supreme Court of Pennsylvania, but the weaknesses of a "virtual representation" doctrine, as described in *Taylor*, cause us to anticipate that the Supreme Court of Pennsylvania would concur in rejecting so dangerously broad a definition of privity.

█ Turning to the traditional categories where privity has been found to exist, it is clear that Nationwide and PMA have no relationship that fits. The *Taylor* Court identified six categories where nonparty preclusion may be appropriate:

1) the nonparty agrees to be bound by the determination of issues in an action between others;

2) a substantive legal relationship—i.e. traditional privity—exists that binds the nonparty;

3) the nonparty was "adequately represented by someone with the same interests who [wa]s a party";

4) the nonparty assumes control over the litigation in which the judgment is rendered;

5) the nonparty attempts to bring suit as the designated representative of someone who was a party in the prior litigation; and,

6) the nonparty falls under a special statutory scheme that "expressly forec-

---

18. In addition to being at odds with efforts to "delineate discrete grounds and clear rules" for nonparty preclusion, this diffuse balancing test would place an undue burden on district courts by requiring them to engage in a time-

consuming evaluation of a functionally limitless range of "factors," robbing both courts and parties of the litigation efficiencies that preclusion law is intended to foster. *Taylor*, 128 S.Ct. at 2174, 2166–67.

los[es] successive litigation by nonlitigants."

*Taylor,* 128 S.Ct. at 2173–74 (internal citations omitted). The first, fourth, fifth and sixth categories plainly do not apply because there is no contention that Nationwide agreed to be bound by the results of the PMA Action, or that it controlled the PMA Action, or sought to bring suit as PMA's designated representative, or fell under a statutory scheme barring it from seeking arbitration. The second category is similarly inapplicable because, as the District Court correctly recognized, no legal relationship existed between Nationwide and PMA.

 The third category, which looks to whether a party "adequately represented" the non-party's interests, bears a superficial resemblance to "virtual representation" but is notably different. Under the "adequate representation" exception, the interests of the party and nonparty must be squarely aligned and there must be either an understanding that the party is acting in a representative capacity or special procedural protections must have been in place in the original action to ensure the due process rights of nonparties who might face issue or claim preclusion. *Taylor,* 128 S.Ct. at 2176. In class action suits, for example, the procedural safeguards of Federal Rule of Civil Procedure 23 must be followed, including the provision in Rule 23(c)(2) requiring notice to nonparties.[19] The carefully circumscribed "adequate representation" exception to the bar against nonparty preclusion is thus in marked contrast to the vague

contours of the virtual representation doctrine applied by the District Court here. There is no basis in the record from which to conclude that PMA was Nationwide's legal representative. There is no indication that PMA understood itself to be representing Nationwide or that Nationwide understood itself to be represented by PMA. And there were no procedural safeguards to protect Nationwide's interests.[20]

We cannot agree with the District Court's conclusion that "Nationwide and PMA share an 'identity of interest' in enforcing the arbitration agreement...." (App.13.) It appears that, to the contrary, no such interest existed at the time of the PMA Action. At that juncture, Hamilton had not even submitted a claim to Nationwide, and there was no arbitratable dispute between the two. Further, it is unclear that, even at the present stage of litigation in state court, Nationwide's and PMA's interests are entirely aligned. The scope of claims that PMA seeks to arbitrate is broader than that which Nationwide seeks to arbitrate. While PMA sought arbitration on issues outside of the Settlement Agreement, such as whether PMA had acted in bad faith in denying Hamilton further coverage, Nationwide seeks arbitration only on the scope of its obligations under the Settlement Agreement, specifically the impact of the discharge and release provision. The record does not show that PMA intended to or did adequately represent Nationwide's interests such that the two can be said to be in privity.

---

19. In *Taylor,* the Supreme Court noted that its precedent has left open the question of whether notice is always required in a suit where preclusion is based on "adequate representation." 128 S.Ct. at 2176 n. 11. The implication, however, is that prior notice greatly strengthens any argument for preclusion.

20. One large problem with the broad virtual representation doctrine is that it can allow courts to circumvent procedural safeguards and "create de facto class actions at will." *Taylor,* 128 S.Ct. at 2176 (quoting *Tice v. American Airlines, Inc.,* 162 F.3d 966, 973 (7th Cir.1998)).

**314**

Binding Nationwide to the order denying arbitration in the PMA Action, either under the guise of virtual representation or adequate representation, would expand the scope of preclusion law in contravention of the "deep-rooted historic tradition that everyone should have his own day in court." *Id.* at 798, 116 S.Ct. 1761 (citation omitted). We therefore conclude that the ruling of the Court of Common Pleas denying arbitration in the PMA Action does not serve as a viable basis for the District Court's preclusion order against Nationwide.

## IV. Conclusion

For the foregoing reasons, we will reverse the District Court's order and remand for consideration of the merits of Nationwide's petition to compel arbitration.