**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-3148 & 10-2836
_____

R&R CAPITAL LLC

v.

LYN MERRITT, a/k/a Linda Merritt;
MER-LYN FARMS LLC,
                                        Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-06-cv-01554)
District Judge:  Honorable Mary A. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1
March 10, 2011
_____

Before:  SCIRICA, AMBRO and VANASKIE, Circuit Judges

(Opinion Filed: May 4, 2011)
_____

OPINION OF THE COURT
_____

VANASKIE, Circuit Judge.

R&R Capital ("R&R") sued Lyn Merritt and her wholly owned limited liability

company, Mer-Lyn Farms ("Mer-Lyn"), over the possession and ownership of three

horses. The District Court conducted a bench trial and ruled in favor of R&R. Merritt now appeals. We will affirm the Judgment of the District Court.

I.

As we write only for the parties, who are familiar with the facts and procedural history of this case, we relate only those facts necessary to our analysis.

R&R and Merritt are former business partners who invested in real estate and horses. They formed several jointly owned limited liability companies ("LLCs") to manage their investments. Merritt was the managing member of all the jointly owned LLCs. Merritt formed Mer-Lyn to manage the payroll and expenses of the LLCs. Merritt's significant other, Leonard Pelullo, helped Merritt manage horses and properties. At the time the business relationship between R&R and Merritt started in 2003, Pelullo had a criminal record and was out of prison while he awaited a new trial.

Pelullo, acting on Merritt's behalf, purchased the three pinhooking horses at issue in this suit at an auction in August of 2004.[1] Shortly after Merritt received delivery of the horses, Merritt's employees noted that one of the horses, Lipstick/Pulpit, appeared lame. A veterinarian subsequently examined the horse and determined that it suffered from a chronic condition that threatened its prospects for racing and breeding. Merritt attempted to "reject" the purchase of Lipstick/Pulpit, but the auction firm deemed the sale final.

In October of 2004, R&R decided that it no longer wanted to invest in race horses. R&R and Pelullo negotiated an agreement under which Merritt would buy out R&R's

---

[1] As the District Court explained, "[p]inhooking horses are young horses that are bought with the intention of training them and then reselling them at a later date." (A. 15.)

2

stake in their jointly owned race horses. Pelullo proposed that R&R purchase the three pinhooking horses as part of the deal. Pelullo told R&R that the pinhooking horses would turn a profit. Pelullo claimed that he also told R&R about Lipstick/Pulpit's health problems, but R&R denied any such knowledge. At any rate, R&R paid $150,000 for Lipstick/Pulpit and $367,000 for the other two horses. Merritt continued to care for the horses after R&R purchased them. Lipstick/Pulpit's condition improved over the next several months, and in May of 2005 she was put up for auction by R&R. A prospective buyer offered $90,000, but Pelullo, who was handling the horse at the auction, rejected the offer.

The business relationship between R&R, Merritt, and Pelullo fell apart shortly thereafter. After Pelullo returned to prison in June of 2005, R&R expressed doubt about Merritt's ability to manage their investments without Pelullo's assistance. R&R also stopped funding their joint ventures. Then, in November of 2005, R&R initiated a fraud action against Merritt in New York state court. R&R sought damages, an accounting of certain LLCs, and the removal of Merritt as managing member of the jointly owned LLCs. The suit included an allegation that Merritt and Pelullo misrepresented the quality of the three pinhooking horses that were purchased at auction in August of 2004. Merritt made counterclaims for tortious interference with contract, slander, lender liability, and rescission of R&R's purchase of the pinhooking horses.

On April 7, 2006, Merritt sent R&R a letter threatening to sell the pinhooking horses if R&R did not compensate her for the cost of caring for them. One week later, R&R initiated this suit in the United States District Court for the Eastern District of

3

Pennsylvania, seeking an injunction preventing the sale of the horses and the return of the horses to R&R. Merritt filed a counterclaim seeking compensation for her expenses caring for the pinhooking horses. Merritt also filed a motion requesting that the District Court abstain from resolving R&R's claims on the ground that the previously filed New York suit encompassed the claims R&R asserted in the federal suit. The District Court denied the motion, explaining:

> [A]lthough the New York action includes an allegation that defendant Lyn Merritt's agent fraudulently induced the plaintiff to purchase the three pinhooking horses that are the subject of the instant litigation, the action does not involve the issue raised here, namely the plaintiff's right to possess the horses, the validity of the defendants' purported lien on the horses, and the defendants' claim for expenses for the care of the horses.

(A. 3-4.) R&R later filed an amended complaint in the federal suit, seeking rescission of its purchase of Lipstick/Pulpit and replevin of the other two horses. Merritt subsequently renewed her motion for the District Court to "return[]" the suit to New York state court. (A. 231.) The District Court denied the renewed motion.

The District Court conducted a two-day bench trial in October of 2006. While the case was under advisement, the New York state litigation continued. At a pretrial hearing, the New York court discussed the pinhooking horses with counsel for Merritt and R&R:

> The Court: At [paragraphs] 147 and 151 [of the complaint] there is something about pinhooking-horses. Maybe, we can agree that those ducks have been taken to another market that is being litigated down in Philadelphia?
>
> Mr. Wagner [counsel for R&R]: Yes.

4

Mr. Fioravanti [counsel for Merritt]: Okay.

(S.A. 88.) Later in the same hearing, Merritt's attorney stated that "[t]he Pinhooking-horses matter is in another jurisdiction." (S.A. 92.)

R&R's New York action proceeded to trial while the federal suit remained under advisement. R&R pursued its fraud claims against Merritt in the New York trial, but did not present any evidence with respect to the pinhooking horses. After R&R presented its case-in-chief, the Court granted Merritt's motion for a directed verdict on all of R&R's claims for damages. The New York litigation continued, however, in order to resolve Merritt's counterclaims against R&R.

On April 17, 2009, while the New York case was still ongoing, the District Court ruled in favor of R&R on its rescission claim, ordering R&R to return ownership of Lipstick/Pulpit to Merritt and ordering Merritt to return the horse's $150,000 purchase price to R&R. Merritt then moved to set aside the District Court's verdict on the ground that the New York court's directed verdict in her favor mooted the federal action. The District Court, relying in part on the aforementioned dialogue between the New York court and counsel regarding the pinhooking horses, concluded that the New York verdict did not pertain to the pinhooking horses at issue in the federal action. Accordingly, the District Court denied Merritt's motion. Merritt subsequently filed a motion for reconsideration, which the District Court denied. Merritt then appealed to this Court.

While that appeal was pending in this Court, Merritt moved the New York court for clarification that its directed verdict in favor of Merritt in R&R's fraud suit included a

5

ruling with respect to the pinhooking horses. The New York court denied the motion on res judicata grounds,[2] but the Court did refer to R&R's federal action as an "improperly split claim." (A. 357.) Merritt then relied on the New York court's opinion in filing a Rule 60(b) motion in the District Court for relief from judgment. Merritt argued that res judicata barred R&R from prevailing in federal court. The District Court denied the motion, reasoning that "[t]he New York decision does not purport to reach the underlying merits of the issues tried to this Court." (A. 85.) Merritt appealed this ruling as well. Merritt's two appeals have been consolidated.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

## A.

Merritt argues that the District Court committed reversible error in declining to abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ("*Colorado River*"), which allows federal courts to stay or dismiss an action when there is a parallel state proceeding. "In reviewing a decision to abstain under the *Colorado River* doctrine, we exercise plenary review over legal questions, including the determination of whether the proceedings in state and federal court are properly considered 'parallel.'" *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571

---

[2] The New York state court indicated that it could not review the determination made in the federal action seeking rescission and replevin with respect to the pinhooking horses. Evidently, the reference to res judicata as the reason for denying Merritt's motion for clarification is based upon the New York state court's conclusion that it could not review the judgment entered in the federal action.

6

F.3d 299, 307 (3d Cir. 2009). If the state and federal proceedings are parallel, we review a district court's decision whether to abstain for abuse of discretion. *See id.*

Two questions control a court's decision to abstain under *Colorado River*. "The initial question is whether there is a parallel state proceeding that raises substantially identical claims [and] nearly identical allegations and issues." *Id.* (internal quotation marks omitted). "If the proceedings are parallel, courts then look to a multi-factor test to determine whether 'extraordinary circumstances' meriting abstention are present." *Id.* at 307-08.

We need not delve into the multi-factor test because we conclude that the state and federal proceedings at issue here are not parallel. R&R's state suit generally accused Merritt of fraud and sought damages, her removal as the managing member of R&R and Merritt's jointly owned LLCs, and an accounting of various LLCs. R&R's federal suit against Merritt and Mer-Lyn sought possession of two pinhooking horses and the rescission of its purchase of a third. Although the state complaint included allegations that Merritt misled R&R regarding the pinhooking horses, it did not concern R&R's right to possess two of the pinhooking horses and to rescind its purchase of the third. Plainly, the claims in the state and federal actions were not "substantially identical." Accordingly, we agree with the District Court's decision not to abstain.

## B.

Merritt next argues that the outcome of the New York litigation collaterally estopped R&R from prevailing in federal court. Under Pennsylvania law, collateral estoppel applies if

7

(1) An issue decided in a prior action is identical to one presented in a later action;
(2) The prior action resulted in a final judgment on the merits;
(3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and
(4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998). Here, the issues presented in the state and federal actions were not identical. R&R's federal suit concerned the pinhooking horses. The New York court expressly observed that the dispute over the pinhooking horses was "taken to another market that is being litigated down in Philadelphia." (S.A. 88.) R&R did not present any evidence with respect to the pinhooking horses in the New York litigation. Accordingly, when the New York court issued a directed verdict on R&R's damages claims against Merritt, the verdict did not concern the pinhooking horses. Collateral estoppel does not apply in these circumstances.

## C.

Last, Merritt argues that insufficient evidence supported the District Court's finding that Merritt materially misrepresented the quality of the pinhooking horses. In reviewing the sufficiency of evidence, "[o]ur function is to determine only whether there is evidence upon which the [factfinder] could properly return a verdict, viewing the evidence most favorably to . . . the non-movant, and giving [the non-movant] the benefit of all reasonable inferences." *Kinnel v. Mid-Atl. Mausoleums, Inc.*, 850 F.2d 958, 961-62 (3d Cir. 1988). Merritt emphasizes the fact that Lipstick/Pulpit was worth more than "nothing" after R&R purchased it. (Appellant's Br. at 51.) Merritt ignores, however, the

8

evidence supporting the District Court's conclusion that Merritt misled R&R about Lipstick/Pulpit. Here, the District Court heard conflicting testimony on whether Merritt or Pelullo, as Merritt's agent, disclosed the horse's health problems. Pelullo insisted that he did disclose this information, and R&R denied it. The Court weighed the evidence and found a lack of disclosure at the time R&R agreed to purchase Lipstick/Pulpit and the other two pinhooking horses. Non-disclosure of a fact can be tantamount to an affirmative assertion. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 178 (3d Cir. 1992) (interpreting Pennsylvania law). We will not disturb the District Court's finding that Merritt made a material misrepresentation.

III.

For the foregoing reasons, we will affirm the Judgment of the District Court.