**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4565
_____

IN RE: MICHELLE L. WEYANDT, a/k/a Michelle Geiger, Debtor

MICHELLE L. WEYANDT a/k/a Michelle Geiger,

Appellant

v.

FEDERAL HOME LOAN MORTGAGE CORPORATION

RONDA J. WINNECOUR,

Intervenor-Appellee
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Nos. 2-11-cv-00957, 2-11-cv-01012, 2-11-cv-01013)
District Judge:  Honorable Terrence F. McVerry
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 27, 2013
_____

Before:  CHAGARES, VANASKIE, and SHWARTZ, Circuit Judges.

(Filed: November 18, 2013)

_____

OPINION
_____

CHAGARES, Circuit Judge.

Debtor Michelle Weyandt appeals the District Court's affirmance of a Bankruptcy Court order dismissing the adversary proceeding she filed against the Federal Home Loan Mortgage Corporation ("Freddie Mac") related to her Chapter 13 bankruptcy proceedings. The District Court affirmed the Bankruptcy Court's order on the grounds that Weyandt lacked standing. For the reasons explained below, we will affirm.

I.

Weyandt owned a residential property located in Irwin, Pennsylvania that was subject to a mortgage held by Wells Fargo Home Mortgage, Inc. ("Wells Fargo"). In November 2009, the mortgage went into default for a second time. Wells Fargo commenced a foreclosure action against Weyandt, and on July 22, 2010, the Court of Common Pleas of Westmoreland County entered a default judgment in favor of Wells Fargo for $87,166.15. Wells Fargo subsequently purchased the property at a sheriff's sale for $1,460.97. The name recorded on the deed to the property reflecting the sale was Freddie Mac.[1] Weyandt refused to leave the property, and Freddie Mac initiated an ejectment action.

Following the sale of the property, Weyandt filed her bankruptcy petition. She listed the value of her residence as $125,000, with a net equity of $22,741.85. Freddie

---

[1] The parties' submissions differ somewhat with respect to how and when the transfer of ownership from Wells Fargo to Freddie Mac occurred. Weyandt represents that Freddie Mac's involvement began when the deed was recorded following the sheriff's sale. The Trustee for Weyandt's estate, though, represents that Freddie Mac obtained the mortgage after it went into default for the first time, and that it was Freddie Mac who obtained the default judgment in 2010 and purchased the property at the sheriff's sale the following year. While we note the differences between the accounts, they have no effect on our analysis.

Mac filed a motion seeking relief from the automatic stay triggered by the bankruptcy filing in order to resume its eviction proceeding against Weyandt. In response, Weyandt filed an action of her own purporting to exercise the bankruptcy Trustee's avoidance powers to overturn the sheriff's sale as a preference or a fraudulent transfer under 11 U.S.C. §§ 544, 547, or 548.

The Bankruptcy Court held a hearing to address Freddie Mac's motion for relief from the stay as well as Weyandt's adversary proceeding. The Trustee for the estate, who appears here as an intervenor, attended the hearing to state that she would not exercise her avoidance powers with respect to the property because to do so would not benefit the estate. She explained that even if the estate recovered the property, there would be insufficient equity in the property to benefit unsecured creditors.

Following the hearing, the Bankruptcy Court issued a memorandum order finding that Weyandt lacked standing to assert the Trustee's avoidance powers and that, even if Weyandt was permitted to assert those powers, the Rooker-Feldman doctrine would bar the Bankruptcy Court from avoiding the sheriff's sale and overturning the state court's default foreclosure judgment. Because Weyandt admitted that the reason she filed her bankruptcy petition was to recover her residential property, her inability to avoid the sale meant that the purpose of filing for bankruptcy was frustrated. Accordingly, the Bankruptcy Court entered three orders: one dismissing Weyandt's bankruptcy case, one dismissing Weyandt's adversary proceeding, and one granting Freddie Mac relief from the automatic stay.

3

Weyandt appealed all three orders, and the District Court upheld the Bankruptcy Court's orders based only on Weyandt's lack of standing. Weyandt timely appealed to this Court and argues that she was entitled to derivative standing, that the Rooker-Feldman doctrine would not prevent her action to avoid the foreclosure sale, and that she properly alleged a prima facie case for an avoidable preference or fraudulent transfer under 11 U.S.C. §§ 544, 547, or 548.

III.

The Bankruptcy Court had jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the District Court had jurisdiction to review the Bankruptcy Court's order under 28 U.S.C. § 158(a). We have jurisdiction pursuant to 28 U.S.C. § 158(d). "In reviewing the decision of the bankruptcy court, we exercise the same standard of review as the district court. Legal determinations are reviewed de novo. Factual determinations are reviewed under the clearly erroneous standard." Sovereign Bank v. Schwab, 414 F.3d 450, 452 n.3 (3d Cir. 2005) (citations omitted).

Weyandt's standing is a threshold issue; if her argument is unsuccessful, we must affirm. In finding that Weyandt lacked standing, the District Court relied primarily on In re Knapper, 407 F.3d 575 (3d Cir. 2005), to conclude that a debtor in Weyandt's situation could not exercise the Trustee's avoidance powers under §§ 544, 547, or 548 of the Bankruptcy Code because those powers are exclusively granted to the Trustee. Weyandt does not contest the District Court's conclusion that she lacked direct standing under In re Knapper, but rather suggests that the District Court erred in finding that she also lacked derivative standing. Weyandt Br. 5.

4

A derivative action is one that a bankruptcy court may authorize under its equitable powers when the Bankruptcy Code's envisioned scheme breaks down. Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 553 (3d Cir. 2003) (en banc). "Even if permitted under the Bankruptcy Code, derivative standing is the exception rather than the rule." In re Baltimore Emergency Servs. II, Corp., 432 F.3d 557, 562 (4th Cir. 2005). In Cybergenics, this Court carefully considered pre-Code bankruptcy practice, the text of relevant Bankruptcy Code provisions, and policy objectives to determine that derivative standing was appropriate in some Chapter 11 bankruptcy cases. Cybergenics, 330 F.3d at 559-76. We held that when a trustee fails to comply with his or her fiduciary duties, the bankruptcy court is empowered under the Bankruptcy Code to use its equitable powers to confer derivative standing on another party. Id. at 572.

Weyandt faces two hurdles in her attempt to assert derivative standing under Cybergenics. First, she must explain why the Chapter 11 derivative standing found in Cybergenics should be extended to the Chapter 13 context. Second, she must show that derivative standing is appropriate here because the Trustee failed to carry out her Trustee duties in declining to initiate an avoidance action directly. See In re Gibson Grp., Inc., 66 F.3d 1436, 1442 (6th Cir. 1995) (observing that in the Chapter 11 context "perhaps the most important prerequisite to derivative standing is that [the party with authority to act under the Bankruptcy Code] has abused its discretion in failing to avoid a preferential or fraudulent transfer"). Otherwise there would be no reason for the Bankruptcy Court to

subvert the Bankruptcy Code's usual scheme and grant Weyandt derivative standing to exercise powers normally granted exclusively to the Trustee.

At this time we do not take a position on whether derivative standing may be appropriate in some Chapter 13 contexts, an issue Weyandt acknowledges in her brief is an unsettled one. We note, however, that the question of whether such an extension is appropriate would require an in-depth examination of the form and purpose of Chapter 13 bankruptcies, which Weyandt has not provided. Instead we hold that even assuming derivative standing may be available in some Chapter 13 bankruptcies, Weyandt cannot prevail because she has not shown that a grant of derivative standing would be appropriate under the facts and circumstances of this case. The Trustee and the Bankruptcy Court agreed that avoiding the foreclosure sale would bring no benefit to the estate because there would be insufficient equity in the property once existing liens, exemptions, and costs were taken into account to leave any funds for creditors. The District Court did not clearly err in reaching the same conclusion. Weyandt has offered no alternative account explaining how a sale would benefit her creditors. It appears, therefore, that the Trustee did not violate any of her duties in failing to pursue an avoidance action. Weyandt is thus not entitled to derivative standing and the Bankruptcy Court was correct to dismiss her adversary action.

IV.

For the foregoing reasons, we will affirm the order of the District Court.