**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1865
_____

In re: LINDA MERRITT a/k/a Lyn Merritt,
Debtor

LINDA MERRITT,
Appellant

v.

CHESHIRE LAND PRESERVATION TRUST; JOHN DOE;
MICHAEL PELET; MID ATLANTIC FARM CREDIT, A.C.A.; KURT HEYMAN

_____

No. 16-1866
_____

In re: LINDA MERRITT a/k/a Lyn Merritt,
Debtor

LINDA MERRITT,
Appellant

v.

R&R CAPITAL LLC; FTP CAPITAL LLC;
KURT HEYMAN; PANDORA FARMS, LLC;
GRAYS FERRY PROPERTIES, LLC; MERRITT LAND, LLC;
BUCK AND DOE RUN VALLEY FARMS

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. Nos. 2:15-cv-01854 & 2:15-cv-01855)
District Judge:  Hon. Gerald J. Pappert

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 9, 2017
_____

Before:  CHAGARES, VANASKIE, and FUENTES, *Circuit Judges*

(Filed: October 2, 2017)
_____

OPINION*
_____

VANASKIE, *Circuit Judge*.

Debtor-Appellant Linda Merritt filed for Chapter 13 bankruptcy after defending a series of lawsuits by a former business partner, Appellee R&R Capital LLC.  During the ensuing bankruptcy proceedings, Merritt proposed to the Trustee several adversary actions intended to avoid certain transfers of assets to R&R and Appellee Cheshire Land Preservation Trust.  After the Trustee decided not to pursue those actions, Merritt filed two adversary actions on her own behalf and sought to compel the Trustee to substitute, join, or ratify her complaints.  When the Bankruptcy Court declined to compel the Trustee, R&R and Cheshire filed motions to dismiss the respective adversary actions filed by Merritt.  The Bankruptcy Court dismissed both actions, declining to grant Merritt derivative standing to pursue the claims and alternatively finding that Merritt had failed to state an avoidance claim.  On review, the District Court affirmed for the same reasons.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

We will affirm on the ground that Merritt lacked derivative standing to pursue the adversary actions.

## I.

Linda Merritt and R&R Capital LLC formed a number of jointly-operated limited liability companies ("the LLCs") between 2003 and 2004. Merritt was appointed the managing member of the LLCs, through which Merritt and R&R invested in commercial real estate and thoroughbred horses. The relationship between Merritt and R&R soured several years later, and R&R initiated six lawsuits in four separate jurisdictions seeking, among other things, to remove Merritt as the managing member of the LLCs.

In one such case before the Eastern District of Pennsylvania,[1] R&R sought rescission and replevin of a sale of horses against Merritt, alleging that she had fraudulently induced R&R into agreeing to the transaction. After a bench trial, the district court found in favor of R&R on the rescission and replevin claims, and the court ordered Merritt to refund the purchase price.

While this Pennsylvania litigation was progressing, R&R sent Merritt notice of her removal as manager of the LLCs for cause under the companies' operating agreements. R&R accompanied this notice with a lawsuit in the Delaware Court of Chancery seeking a declaration that Merritt was properly removed as manager and member of the LLCs. By declaratory judgment, the Court of Chancery affirmed that Merritt had been removed as manager for cause.

---

[1] *R&R Capital, LLC v. Merritt*, 632 F. Supp. 2d 462, 479–80 (E.D. Pa. 2009), *aff'd*, 426 F. App'x 85 (3d Cir. 2011).

3

In the wake of Merritt's removal, Kurt Heyman was appointed by the Delaware court as the receiver for the LLCs in their liquidation and dissolution. Heyman had the LLCs' properties evaluated and appraised. One such property—a 90-acre tract of land located on Apple Grove Road in East and West Marlborough Townships, Pennsylvania, and purchased for $1.3 million—was appraised at $3.2 million. Despite the appraisal, Heyman was unable to dispose of the Apple Grove property by private sale, purportedly because of the state of the real estate market in 2009. Heyman instead held a public auction in 2010 to sell the Apple Grove property, and Cheshire Land Preservation Fund's $1.1 million bid was the highest received. Because this bid did not satisfy the mortgage on the property held by MidAtlantic Farm Credit, Heyman convinced Cheshire to purchase the property post-auction for $1.25 million, an amount that narrowly exceeded the outstanding mortgage.

Meanwhile, in the ongoing Delaware litigation, the Court of Chancery ordered a freeze on the bank accounts of the LLCs in response to evidence that Merritt was continuing to withdraw funds. Heyman, as receiver, sought a contempt order alleging that Merritt was frustrating his ability to wind up the LLCs' affairs. The Court of Chancery found Merritt in contempt after her violation of several previous orders. The contempt order, among other penalties, removed Merritt as a member of all the companies in receivership and stripped her of any entitlement to the distribution of the assets of those companies at the conclusion of their dissolution and winding up. (App. 806–09.) Merritt contested the contempt order, but the Court of Chancery dismissed her

4

claims. Her appeal to the Delaware Supreme Court was unsuccessful, and the United States Supreme Court denied her petition for a writ of certiorari.

After Merritt's challenges to the contempt order concluded, Merritt filed a voluntary bankruptcy petition under Chapter 13. As the bankruptcy proceeded, Merritt proposed two adversary complaints to the Chapter 13 Trustee, one seeking to avoid the transfer of the Apple Grove property to Cheshire, and the other challenging Heyman's transfer of $5 million in assets of the LLCs to R&R for less than equivalent value. When the Trustee did not take action, Merritt filed her own adversary complaints against Cheshire and R&R. The Cheshire complaint sought to avoid Heyman's sale of the Apple Grove property under § 548(a)(1)(B) of the Bankruptcy Code. The R&R complaint alleged that the transfers of assets to R&R resulting from the Delaware contempt order were a fraudulent conveyance under § 548.

Merritt next filed a motion to compel the Trustee to substitute, join, or ratify her complaints against Cheshire and R&R, or else abandon the claims and grant Merritt derivative standing to prosecute the actions. The Bankruptcy Court denied this motion after an emergency hearing. Both Cheshire and R&R then moved to dismiss Merritt's claims against them on the basis that she lacked standing. Merritt also moved for leave to amend the complaint. The Bankruptcy Court granted Cheshire's motion to dismiss, explaining that Merritt did not have derivative standing to pursue a § 548 claim and had failed to state a claim because she did not hold an interest in the Apple Grove property when it was transferred. For the same reasons, the Court held that any amendment of the complaint would be futile. The following day, the Bankruptcy Court granted R&R's

5

motion to dismiss and denied Merritt's motion for leave to amend, referring to its reasoning in granting Cheshire's motion the day before. Merritt appealed the Bankruptcy Court's decisions to the District Court, which affirmed the orders below.

Merritt now appeals the District Court's orders affirming the motions to dismiss, and the cases have been consolidated for appeal.

## II.

The Bankruptcy Court had jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(1) and § 1334. The District Court had jurisdiction pursuant to 28 U.S.C. § 158(a). We have appellate jurisdiction under 28 U.S.C. § 158(d) and § 1291. We exercise the same standard of review as the District Court, "review[ing] the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130–31 (3d Cir. 1998).

## III.

We begin and end our analysis with the issue of derivative standing. Traditionally, the avoidance powers under 11 U.S.C. § 548 belong exclusively to the trustee. *In re Knapper*, 407 F.3d 573, 583 (3d Cir. 2005). But we have previously recognized that a bankruptcy court may, in certain situations, authorize an action based on derivative standing under the court's equitable powers "when the Bankruptcy Code's envisioned scheme breaks down." *In re Weyandt*, 544 F. App'x 107, 110 (3d Cir. 2013) (citing *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 553 (3d Cir. 2003) (en banc)). For example, "derivative standing is a prudent

6

way for bankruptcy courts to remedy lapses in a trustee's execution of its fiduciary duty." *Cybergenics*, 330 F.3d at 572. Nonetheless, such scenarios are uncommon, and "derivative standing is the exception rather than the rule." *In re Balt. Emergency Servs. II, Corp.*, 432 F.3d 557, 562 (4th Cir. 2005).

In this Circuit, derivative standing has not yet been applied in the context of a Chapter 13 bankruptcy. Merritt nevertheless urges us to extend derivative standing to Chapter 13 debtors to pursue avoidance actions. But we need not decide the question in this case because the specific circumstances do not warrant derivative standing even if it were available to Chapter 13 debtors.

In *Weyandt*, a case in which a Chapter 13 debtor argued that she was improperly denied derivative standing to pursue an avoidance action, we explained that the debtor was required to demonstrate that derivative standing was appropriate in her case because the Trustee failed to carry out its duties in declining to initiate an avoidance action directly. 544 F. App'x at 110; *see, e.g.*, *Cybergenics*, 330 F.3d at 559–76. Regarding this requirement, we cited a Sixth Circuit decision, *In re Gibson Grp., Inc.*, which observed that "perhaps the most important prerequisite to derivative standing is that [the party with authority to act under the Bankruptcy Code] has abused its discretion in failing to avoid a preferential or fraudulent transfer." 66 F.3d 1436, 1442 (6th Cir. 1995).

In this case, Merritt has not demonstrated that the Trustee failed to carry out his duties or had abused his discretion in declining to pursue her proposed avoidance claims. Based on the Trustees' testimony at the motion to compel hearing, the Bankruptcy Court observed that

(1) Merritt did not request that [the Trustee] file the adversary complaints until shortly before the expiration of the two-year statute of limitations, and he had insufficient time to conduct a reasonable investigation into the long background of the various litigations and sign the complaints in compliance with [Federal Rule of Bankruptcy Procedure] 9011; (2) [the Trustee] knew that Cheshire and R&R Capital had, at the very least, a colorable defense in rebutting Merritt's claims; (3) Merritt Land—not Merritt herself—owned the Apple Grove Property; (4) the Contempt Order extinguished any right Merritt had to the proceeds from the sale of any of the Entities' properties, including the Apple Grove Property; and (5) Heyman auctioned the Apple Grove Property "under the auspices of the Chancery Court" for "reasonably equivalent value."

(App. 32–33.)  Given these circumstances, both the Bankruptcy Court and the District Court concluded that the Trustee did not violate any fiduciary duty.

In particular, the Bankruptcy Court and District Court focused heavily on the timing of Merritt's proposed adversary actions.  They noted that Merritt sent the draft complaints to the Trustee only three weeks before the statute of limitations was to expire and provided no explanation for her delay.  This forced the Trustee to attempt to familiarize himself with a maze of litigation across multiple jurisdictions in order to determine whether he should pursue the claims and represent to the Bankruptcy Court that each claim was non-frivolous under penalty of sanctions.  Even beyond Merritt's delay, the Trustee could reasonably conclude that Merritt acted fraudulently in light of the Pennsylvania ruling and the Delaware contempt order, such that the avoidance complaints would be rebutted.  The Trustee could also reasonably believe that the sale of the Apple Grove property satisfied § 548's "reasonably equivalent value" requirement because the price negotiations had yielded a price above the outstanding mortgage and in excess of the highest bid at auction.

8

Merritt argues that, despite these findings, pursuing the avoidance actions would have been best for the estate. But this line of reasoning assumes that these claims will succeed. The Trustee was placed in a position where he was required to determine whether the claims were frivolous or meritorious in a very short period of time. He did not abuse his discretion in deciding not to pursue them, given the circumstances above, regardless of the potential benefit to the estate of a successful outcome. This is not an example of the "Bankruptcy Code's envisioned scheme break[ing] down." *Weyandt*, 544 F. App'x at 110.

We further disagree with Merritt's assertion that, because she mentioned her pending adversary actions in her confirmed Chapter 13 plan and neither Cheshire nor R&R objected, they have waived their ability to challenge her standing to pursue those actions. Derivative standing is an application of the bankruptcy courts' equitable powers, *Cybergenics*, 330 F.3d at 568, and a debtor cannot confer derivative standing upon him or herself by simply by noting in the plan that an adversary action has been filed. Merritt's Chapter 13 plan states that, as a matter of fact, Merritt was pursuing the adversary proceedings. Cheshire and R&R cannot be held to have forfeited their ability to challenge Merritt's standing for failing to object to a true statement. Rather, they properly pursued their challenge by way of motions to dismiss in the adversary actions.

Thus, we find that Merritt was not inappropriately denied derivative standing to pursue her avoidance claims, and dismissal was proper under Federal Rule of Civil Procedure 12(b)(1). Since Merritt lacks standing, we need not address the sufficiency of her avoidance claim under § 548.

9

**IV.**

For the foregoing reasons, we will affirm the March 10, 2016 orders of the District Court affirming the March 25 and 26, 2015 orders of the Bankruptcy Court.