# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthonee Patterson, :
                Appellant :
                 : No. 1312 C.D. 2016
          v. :
                 : Submitted: March 24, 2017
Kenneth Shelton, Individually, and :
President of the Board of Trustees :
of the General Assembly of the :
Church of the Lord Jesus Christ :
of the Apostolic Faith, Inc. :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION BY
JUDGE McCULLOUGH                      FILED: November 29, 2017

Anthonee Patterson (Patterson) appeals, *pro se*, from the July 14, 2016 order of the Court of Common Pleas of Philadelphia County (trial court) denying his motion to declare certain orders void based upon the lack of subject matter jurisdiction.

## Facts and Procedural History

The extensive procedural and factual history of this matter is recounted in this Court's unreported memorandum opinion in the case of *Patterson v. Shelton* (Pa. Cmwlth., No. 2396 C.D. 2011, filed March 6, 2013), *appeal denied*, 78 A.3d 1092 (Pa. 2013), wherein we summarized the same as follows:

The key players involved in the present offshoot of the controversy are: (1) the Church of the Lord Jesus Christ of the Apostolic Faith (**the "Church"**), an unincorporated association, founded in 1919; (2) the "Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc.", (**the "Corporate Trustee"**), a Pennsylvania nonprofit corporation formed in 1947 **to act as the trustee and hold property in trust for the Church**; (3) Patterson, a life-long member, elder, and minister of the Church; and (4) Shelton, the current "Bishop" and/or "Overseer" of the Church and "President" of the Corporate Trustee.

The dispute began in 1991 when then-Bishop S. McDowall Shelton, died, leaving vacancies in the offices of "Overseer" of the Church and "President" of the Corporate Trustee. Immediately upon Bishop S. McDowall Shelton's death, Shelton and his "faction" took control of the accounts, trusts and properties of the Church and Corporate Trustee. After extensive litigation initiated by two other dissident factions of the Church congregation over the leadership of the Church and Corporate Trustee, the trial court ultimately determined, and this Court later affirmed, that Shelton and his Board of Trustees were in control.

. . .

On July 24, 1995, Patterson, as life-long member, elder and minister of the Church, commenced an action in equity against Shelton, in Shelton's individual capacity and as the President of the Board of Trustees of the Corporate Trustee. Patterson alleged that since taking control of the Church and Corporate Trustee in 1991, Shelton and his Board of Trustees have misappropriated funds, "looted the Church's assets," paid themselves salaries in contravention of Church By-Laws, and funded private expenditures, lavish vacations, lingerie, cars, homes and other personal incidentals with assets which were donated and designated for Church religious and charitable missions.

Patterson requested, *inter alia*: (1) the appointment of a receiver to take control of the assets of the Church held by the Corporate Trustee; (2) an order requiring Shelton to issue

annual financial reports for the years 1991, 1992, 1993, and 1994; and (3) an accounting.

The parties engaged in discovery. Patterson retained James A. Stavros, CPA (Stavros), a forensic financial investigator, to analyze the finances and expenditures of the Church and the Corporate Trustee. Stavros authored a report which detailed his findings that Shelton and his Board of Trustees withdrew hundreds of thousands of dollars from Church accounts with no accounting of where the funds went and that they expended Church funds on a significant amount of "personal" items and expenditures that appeared to be outside the normal course of business and outside Church laws and customs. He concluded that Church accounts had declined by nearly $1 million under Shelton's control.[1]

In January 2006, the parties agreed to submit to binding arbitration. The Arbitrator concluded that the credible evidence established that Shelton had engaged in various acts of fraud, mismanagement, conspiracy, breach of fiduciary responsibilities, violations of By-laws and the Articles of Incorporation in seizing corporate funds and assets and depleting bank accounts designated for Church-related purposes. The Arbitrator concluded that Shelton had diverted Church funds and assets to himself and others for his and their benefit. The Arbitrator appointed a receiver and directed Shelton to account for all Church funds removed by him or those acting with him.

Shelton filed a motion to vacate the award which the trial court denied.[2] On appeal, this Court overturned the arbitration award because the arbitrator went beyond the

---

[1] Patterson's original complaint was stricken by the trial court in 1996 for unknown reasons and reinstated upon Patterson's motion in 2004. However, during the interim, the trial court determined that Shelton was the rightful General Overseer of the Church and President of the Corporation. By decision dated April 10, 2001, this Court affirmed the trial court's determination and our Supreme Court denied separate petitions for allowance of appeal. *See Church of the Lord Jesus Christ of the Apostolic Faith v. Shelton* (Pa. Cmwlth., Nos. 376, 559 C.D. 2000, filed April 10, 2001), *appeals denied*, 790 A.2d 1019 (Pa. 2001) and 812 A.2d 1232 (Pa. 2001).

[2] By order dated May 10, 2006, the trial court confirmed the arbitrator's award in favor of Patterson and against Shelton and entered judgment in conformity therewith.

scope of his authority in fashioning relief. *See Shelton v. Patterson*, 942 A.2d 967 (Pa. Cmwlth. 2008). This Court remanded the matter to the trial court to determine whether Patterson was entitled to relief under the [Pennsylvania Nonprofit Corporation Law (NCL), 15 Pa.C.S. §§5101-5997].

On remand, Shelton moved for summary judgment on the ground that Patterson lacked "statutory standing" under Section 5782 of the NCL, 15 Pa.C.S. §5782. Shelton argued that only an officer, director, or member of a nonprofit corporation has "statutory standing" to enforce a right of a nonprofit corporation through a derivative action.

. . .

Shelton pointed to the Corporate Trustee's Articles of Incorporation which limited its membership in the nonprofit corporation to its Board of Trustees. Shelton asserted that because Patterson was never a member of the Board of Trustees he was never a "member" of the Corporate Trustee, and thus, he had no "statutory standing" to bring claims that are derivative of the Corporate Trustee's rights.

The trial court agreed that under Section 5782 of the NCL, Patterson could only bring suit if he was a member of the Corporate Trustee at the time of the alleged events outlined in the Complaint. The trial court looked to Article IX of the Articles of Incorporation which states: "membership in the corporation [Corporate Trustee] shall consist of those persons serving as members of the Board of Trustees." The trial court concluded that because Patterson had never been a member of the Board of Trustees he was not a member of the Corporate Trustee. The trial court reasoned that because the NCL created the cause of action and designated who may sue; standing was a jurisdictional prerequisite to any action. *Grom v. Burgoon*, 672 A.2d 823 (Pa. Super. 1996). The trial court "finding no possible way to affirm that [Patterson] has standing" granted the motion for summary judgment and dismissed the case.

*Id.*, slip op. at 1-6 (emphasis in original). On appeal, this Court reversed the order of the trial court, concluding that Patterson, as a member of the Church congregation, was "part of the beneficiary class for which the Corporate Trustee held the Church's assets in trust," and, as such, had "standing to bring this action to enforce his own rights and the rights commonly held by all beneficiaries to obtain restoration to the Church of its full losses." *Id.*, slip op. at 16-17. We remanded the matter to the trial court to conduct a trial on the remaining factual and legal issues raised by Patterson in his complaint.

On July 15, 2014, the trial court commenced a non-jury trial. During the course of the trial, an issue arose as to whether the trial court had subject matter jurisdiction over this dispute. Following argument, the trial court concluded that it lacked such jurisdiction because the matter requires interpretation of religious doctrine and the same was prohibited by the First Amendment. Hence, the trial court issued an order granting a motion to dismiss filed by Shelton. Patterson appealed to this Court, but we affirmed the trial court's order, concluding that the trial court ably disposed of the subject matter jurisdiction issue in its opinion. Patterson thereafter sought allowance of appeal with the Pennsylvania Supreme Court, but the same was denied. Patterson subsequently filed a petition for a writ of certiorari with the United States Supreme Court, but the same was similarly denied.

**Patterson's Most Recent Motion**

On May 27, 2016, Patterson filed a motion with the trial court to determine certain orders void based on the lack of subject matter jurisdiction. In his motion, Patterson sought an order from the trial court "declaring that the January 31, 2008 Commonwealth Court Order, and all other post-July 10, 2006 rulings/orders not consistent with the judgments on the binding common law arbitration award, are void

5

. . . ." (Reproduced Record (R.R.) at 1015a.) Patterson alleged that the trial court "finally determined what [he] has been arguing all along – that there was no subject matter jurisdiction as the parties had agreed to resolve all of their disputes through binding, common law arbitration." (R.R. at 1018a.) In sum, Patterson alleged that only the 2006 binding arbitration award remained valid and asked the trial court to declare as void all post-July 10, 2006 rulings/orders that were inconsistent with that award because the courts lacked subject matter jurisdiction to alter the same.

By order dated July 14, 2016, the trial court denied Patterson's motion.[3] Patterson filed a notice of appeal with the trial court. The trial court thereafter issued an opinion in support of its order explaining that Patterson mischaracterizes its previous ruling regarding lack of subject matter jurisdiction. Contrary to Patterson's allegations, the trial court did not rule that it lacked subject matter jurisdiction because of the parties' agreement to litigate through binding arbitration; but rather, the trial court ruled that it lacked such jurisdiction due "to the Deference Rule, which prohibits courts from exercising jurisdiction over cases that would require them to decide ecclesiastical questions." (R.R. at 1078a.) In other words, the trial court explained that it had no ability "to decide religious questions" and that its prior opinion "never mentions the issue of jurisdiction as it relates to common law arbitration." (R.R. at 1079a.) Further, the trial court explained that it was "without jurisdiction to strike the Commonwealth Court's January 2008 order vacating the Arbitration Award" and lacked the authority

---

[3] Shelton had filed a motion to strike Patterson's motion as moot, alleging that Patterson's motion "defies logic and violates bedrock principles of jurisdiction and substantive law." (R.R. at 1042a.) In this motion, Shelton also sought sanctions for Patterson's alleged bad-faith, frivolous motion. However, by separate order of the same date, the trial court dismissed Shelton's motion to strike as moot in light of its order denying Patterson's motion.

6

to disturb an appellate court ruling. *Id.* For the same reasons, the trial court noted that it had no power to reinstate the arbitration award which had been vacated on appeal.

On appeal to this Court,[4] Patterson argues that the trial court erred as a matter of law in denying his motion. More specifically, Patterson asserts that because the courts of this Commonwealth lacked subject matter jurisdiction over this dispute, all prior decisions in this case are void *ab initio* and the common law arbitration award that was improperly vacated remains valid. Patterson also argues that his due process rights have been violated by this Court vacating the binding arbitration award and then affirming the trial court's determination that the courts lacked subject matter jurisdiction over the dispute which purportedly implicates neutral principles of law. Alternatively, Patterson requests that this Court reinstate its previous order directing the trial court to conduct a trial on the merits.

## Discussion

### Shelton's Motion to Quash

Before we reach the merits of Patterson's arguments, we must address a motion to quash filed by Shelton.[5] In this motion, Shelton alleges that Patterson's appeal is "not only improper, but is devoid of any good faith legal basis and untethered to any semblance of fact-based reality." (Shelton's Motion to Quash at 11.) More specifically, Shelton alleges that the matter is over as this Court invalidated the

---

[4] This Court's review is limited to a determination of whether the trial court abused its discretion or erred as a matter of law. *Mid Valley Taxpayers v. Mid Valley School*, 416 A.2d 590, 592 (Pa. Cmwlth. 1980). Furthermore, the decision of the trial court will stand "if there exists sufficient evidence to justify the findings and logically sound, reasonable inferences and conclusions derived therefrom." *Groff v. Borough of Sellersville*, 314 A.2d 328, 330 (Pa. Cmwlth. 1984).

[5] Shelton relies on Pa.R.A.P. 1972(3) and (7), which allow a party to move to dismiss an appeal for want of jurisdiction or for any other reason appearing on the record, respectively.

7

arbitration award and affirmed the trial court's order dismissing Patterson's complaint for lack of subject matter jurisdiction, with our Pennsylvania Supreme Court and United States Supreme Court rejecting any further appeal of the latter. In other words, Shelton describes our prior decisions as final and conclusive. Shelton also states that our decision invalidating the arbitration award was based upon the well-established principle that an arbitrator cannot exceed the scope of his authority and that no court can act without subject matter jurisdiction. Additionally, Shelton alleges that the trial court has no authority to invalidate an order of this Court.

However, Shelton's allegations go directly to the underlying merits of Patterson's appeal, or, as Patterson states in his response in opposition to the motion to quash, constitute "an improper attempt to litigate the merits of the appeal in a pre-trial motion." (Patterson's Opposition to Appellee's Motion to Quash at 1.) Indeed, Shelton's brief on the merits essentially mirrors the arguments he raises in his motion to quash. Therefore, we will deny Shelton's motion to quash.

**Merits of Appeal**

Turning back to the merits, Patterson contends that this Court "rendered its own prior orders void, by illegally interfering with the binding common-law arbitration and by recently ruling that the Pennsylvania courts have no subject matter jurisdiction to address this matter." (Appellant brief at 19.) Patterson maintains that the last "valid judgment" is the "confirmation of the [arbitration] [a]ward by the [trial court]." *Id.* at 20. Alternatively, Patterson argues that this Court must order a trial on the merits because if the Pennsylvania courts had subject matter jurisdiction to "interfere" with the arbitration award, then the Pennsylvania courts are "obligated to resolve the theft of the Church assets and funds." *Id.* at 23 (emphasis in original). In

8

the course of this argument, Patterson reiterates his allegation that this Court should never have reviewed the arbitration award because the parties agreed that the arbitration was binding and non-appealable. Patterson suggests that our decision with respect to the arbitration award "altered the law of Pennsylvania concerning binding common-law arbitration by turning that law upside down in a non-precedential opinion applicable solely to Patterson . . . ." *Id.* at 29. Ultimately, Patterson states that the decision by the trial court that it lacked subject matter jurisdiction, and our affirmance of that decision, left him without a forum to resolve his claims.

In response, Shelton first contends that the trial court's July 14, 2016 order was not a final order under Pa.R.A.P. 341. Next, Shelton avers that any matters relating to the arbitration award and any issue relating to subject matter jurisdiction have been finally resolved and cannot be relitigated. Third, Shelton states that the trial court has no authority to invalidate an order of this Court. Fourth, Shelton notes that Patterson deliberately mischaracterizes the legal basis for the trial court's determination that it lacked subject matter jurisdiction, i.e., it was completely unrelated to the arbitration award. Shelton notes that this Court relied on well-settled principles of law in vacating said award. Finally, Shelton points to the fundamental illogic of Patterson's motion to the trial court and subsequent appeal here, i.e., a court cannot act without jurisdiction, yet he asks the trial court to rule on his motion while implicitly asserting it was without jurisdiction. In sum, Shelton contends that Patterson's current appeal to this Court is "not only improper, but is devoid of any good faith legal basis and unmoored to factual or legal reality." (Shelton's brief at 10.)

9

## Pa.R.A.P. 341

We begin with Shelton's contention that the trial court's July 14, 2016 order was not a final order under Pa.R.A.P. 341. Pa. R.A.P. 341 provides, in relevant part, as follows:

> (a) General Rule.-- Except as prescribed in paragraphs (d) and (e) of this rule, an appeal may be taken as of right from any final order of a government unit or trial court.

> (b) Definition of Final Order.-- A final order is any order that:

>> (1) disposes of all claims and of all parties; or

>> (2) RESCINDED

>> (3) is entered as a final order pursuant to paragraph (c) of this rule.

Shelton avers that the trial court's order does not satisfy any of the conditions above and that the final, appealable order in this case was entered on August 1, 2014, when the trial court granted his motion to dismiss for lack of subject matter jurisdiction and effectively put Patterson out of court. Shelton notes that Patterson had exhausted his appeals from that order. We do not agree with Shelton.

Following the trial court's dismissal of Patterson's complaint for lack of subject matter jurisdiction and the exhaustion of his appeals therefrom, Patterson filed the present motion with the trial court to determine certain orders void based on the lack of such jurisdiction. Patterson filed this motion under the original 1995 docket number assigned by the trial court. In essence, Patterson was seeking to follow-up on the trial court's holding that it lacked subject matter jurisdiction. Shelton responded by filing a motion to strike Patterson's motion and an accompanying brief. Patterson filed a response in opposition to Shelton's motion to strike and also filed a brief in

10

support of his motion. The trial court ultimately denied Patterson's motion in its July 14, 2016 order. This order disposed of Patterson's claim, effectively putting him out of court. Hence, we conclude that said order was a final, appealable order under Pa.R.A.P. 341.

## Subject Matter Jurisdiction

Patterson argues that, because the trial court found that it lacked subject matter jurisdiction over his claims, a decision this Court affirmed, any orders entered by this Court are void, thereby rendering the arbitrator's award, as confirmed by the trial court, the last valid judgment in this case. We agree.

In *Hughes v. Pennsylvania State Police*, 619 A.2d 390, 393 (Pa. Cmwlth. 1992), *appeal denied*, 637 A.2d 293 (Pa. 1993), this Court explained that "[i]t is hornbook law that subject matter jurisdiction gives a court the power to decide a controversy" and "whenever a court discovers that it lacks jurisdiction over the subject matter or the cause of action *it is compelled to dismiss the matter under all circumstances*, even where we erroneously decided the question in a prior ruling." (Citations omitted) (emphasis in original). Additionally, our Supreme Court has held that a judgment by a court that lacks subject matter jurisdiction constitutes a "void judgment" which "cannot be made valid through the passage of time." *M & P Management, L.P. v. Williams*, 937 A.2d 398, 398 (Pa. 2007).

In this case, Patterson's original complaint filed with the trial court sought relief under the NCL. The parties ultimately agreed to proceed to binding arbitration in November 2005, with no right to appeal, as memorialized in an order from the trial court dated January 10, 2006. This order also dismissed the case from the trial court per agreement of the parties. Nevertheless, after the arbitrator ruled in Patterson's

favor, Shelton filed a petition to vacate the arbitration award with the trial court. While the trial court denied Shelton's petition, this Court reversed the trial court's decision, vacated the arbitration award, and remanded to the trial court for further proceedings relating to these NCL claims. However, because this Court affirmed the trial court's decision concluding that it lacked subject matter jurisdiction over his remaining NCL claims on the basis that resolution of the same would require the trial court to interpret religious doctrine, something it was prohibited from doing under the First Amendment,[6] any prior decisions relating to the same are null and void. As a result, the only valid, remaining determination in this case is the binding arbitration award, as agreed to by the parties in November 2005, and confirmed by the trial court. As noted above, the trial court, by order dated May 10, 2006, confirmed the arbitrator's award and entered judgment in favor of Patterson and against Shelton. Thus, Patterson's remedy lies with enforcement of that judgment.

Accordingly, the order of the trial court is reversed.

_____
PATRICIA A. McCULLOUGH, Judge

---

[6] Indeed, the law is well settled that "civil courts may not decide purely religious matters." *Peters Creek United Presbyterian Church v. Washington Presbytery*, 90 A.3d 95, 104 (Pa. Cmwlth.), *appeal denied*, 102 A.3d 987 (Pa. 2014) (citing *Jones v. Wolf*, 443 U.S. 595 (1979)). In *Jones*, the United State Supreme Court explained that "the First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice." *Jones*, 443 U.S. at 602.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthonee Patterson,                          :
                    Appellant                :
                                             :   No.  1312 C.D. 2016
         v.                                  :
                                             :
Kenneth Shelton, Individually, and           :
President of the Board of Trustees           :
of the General Assembly of the               :
Church of the Lord Jesus Christ              :
of the Apostolic Faith, Inc.                 :

## *ORDER*

AND NOW, this 29th day of November, 2017, the motion of Kenneth Shelton to quash the appeal of Anthonee Patterson is denied.  The order of the Court of Common Pleas of Philadelphia County, dated July 14, 2016, is hereby reversed, consistent with this opinion.

_____
PATRICIA A. McCULLOUGH, Judge