**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1662
_____

THE TRUSTEES OF THE GENERAL ASSEMBLY OF THE CHURCH OF THE
LORD JESUS CHRIST OF THE APOSTOLIC FAITH, INC.; CHURCH OF THE
LORD JESUS CHRIST OF THE APOSTOLIC FAITH

v.

ANTHONEE PATTERSON; ROCHELLE BILAL, IN HER OFFICIAL
CAPACITY AS SHERIFF OF PHILADELPHIA COUNTY

ANTHONEE PATTERSON,
Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:2-21-cv-00634)
District Judge:  Honorable Karen S. Marston
_____

Argued December 8, 2021
_____

Before:  SHWARTZ, PORTER, and FISHER, <u>Circuit Judges</u>.

(Filed: December 21, 2021)

Emma M. Kline
Fox Rothschild
2700 Kelly Road, Suite 300
Warrington, PA 18976

Michael K. Twersky [ARGUED]

Beth L. Weisser
Fox Rothschild
2000 Market Street, 20th Floor
Philadelphia, PA 19103

Counsel for Plaintiffs-Appellees

Andrew S. Gallinaro
Joseph W. Jesiolowski
Kevin D. Kent [ARGUED]
David K. Lukmire
Conrad O'Brien
1500 Market Street
West Tower, Suite 3900
Philadelphia, PA 19102

Counsel for Defendant-Appellant Patterson

Eleanor N. Ewing
Craig R. Gottlieb
Ann M. Kirby
City of Philadelphia Law Department
1515 Arch Street
Philadelphia, PA 19102

Counsel for Defendant-Appellee Sheriff of Philadelphia

_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

The Church of the Lord Jesus Christ of the Apostolic Faith ("Church") and the

Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic

Faith ("Corporation") obtained an injunction that enjoined Anthonee Patterson from

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

enforcing an arbitration award transferring Church and Corporation assets to Patterson. Patterson claims that the District Court lacked subject matter jurisdiction under the Rooker-Feldman doctrine and that collateral estoppel bars the Church and Corporation's arguments. Because the Church and Corporation were not parties or in privity with parties to the arbitration or related state-court litigation, neither Rooker-Feldman nor collateral estoppel prevented the District Court from granting the preliminary injunction. We will therefore affirm.

I

The Church is a religious society located in Philadelphia, and the Corporation holds in trust and manages real and personal property for the Church's use. The leader of the Church is the "General Overseer." App. 93. Under the Church's Bylaws, the General Overseer is the religious leader of the Church and has authority to purchase and sell property for the Church. The Board of Trustees controls the Corporation and manages the Church's secular affairs. The General Overseer is one of six trustees.

In October 1991, General Overseer Bishop McDowell Shelton died, triggering a succession dispute between Kenneth Shelton ("Shelton") and Roddy Nelson Shelton, both of whom claimed that they were the new General Overseer. Some congregants followed Roddy Nelson Shelton and Patterson to a new church located in Darby, Pennsylvania. Although excommunicated from the Philadelphia congregation that Shelton leads, Patterson views himself as a member of the Church who has been removed due to a disagreement over how the Church is operated.

3

In 1995, Patterson sued Shelton and a Corporation board member[1] in the Philadelphia County Court of Common Pleas for violations of Pennsylvania's Nonprofit Corporations Law (the "Patterson Action"). In his Answer, Shelton asserted counterclaims "individually and on behalf of the Church and the Church Corporation," App. 144, against Patterson for fraud. The case was "stricken by the calendar judge" in 1996 but reinstated in 2005. App. 741, 743.

Thereafter, Patterson and Shelton agreed to resolve their dispute via arbitration and the state-court judge dismissed the case. In April 2006, the arbitrator found that Shelton had diverted Church funds, ordered "an accounting of all funds removed from Corporate Church accounts or trusts by . . . Shelton," and appointed a receiver.[2] App. 635.

Shelton petitioned to vacate the arbitration award, and Patterson moved to confirm it. The Church and Corporation filed a "Limited Entry of Appearance" in the confirmation proceeding, but the Court of Common Pleas struck it as an "impermissible filing" by nonparties. App. 619. Thereafter, in an order dated July 10, 2006, the court confirmed the arbitration award and denied the petition to vacate. App. 594-96.

---

[1] The claims against this Corporation board member were eventually dismissed.

[2] In May 2006, the arbitrator issued a supplemental opinion noting that Shelton "and the Church have sought to collaterally attack the final judgment on the merits . . . by asserting an argument that the Church was not named as a party in the Complaint and hence there is a Fourteenth Amendment violation of taking property without due process." App. 637. The arbitrator found that all procedural arguments—"including standing and failure to join indispensable parties"—were expressly waived, and that even if the Corporation were added as a party, "the result would inevitably be the same as the 'corporate veil' would be pierced" due to "evidence of intermingling of corporate and personal affairs." App. 638.

Following this adjudication, Patterson's attorney filed a praecipe requesting that the prothonotary enter judgment on the April 2006 arbitration award "in favor of the Plaintiff, ANTHONEE PATTERSON, against Defendant, KENNETH SHELTON."[3] App. 620 (capitalization in original). The praecipe is stamped "FILED PROPROTHY" with a date of July 20, 2006. App. 620.

In the meantime, the arbitrator received the receiver's report and on July 25, 2006, issued a "Final Adjudication and Decree," which, among other things, ordered that the Church transfer "[a]ll property of the Church . . . heretofore held by [Corporation]" to Patterson's "control." App. 652, 661. Thereafter, Patterson's attorney filed another pracecipe requesting that the prothonotary enter judgment on the arbitration award, but this time "in favor of Bishop Anthoneé J. Patterson and against the Trustees of the General Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc. and the Church of the Lord Jesus Christ of the Apostolic Faith headed by Bishop Kenneth N. Shelton." App. 651. The praecipe is stamped "FILED PROPROTHY" with a date of October 12, 2006. App. 651. On April 17, 2007, the prothonotary entered the "Final Adjudication and Decree" on the docket. App. 652.

---

[3] The Pennsylvania Rules of Civil Procedure govern the prothonotary's entry of judgment, and multiple rules suggest that the entry of judgment on praecipe is near-automatic. First, Rule 205.2 provides that papers filed with the prothonotary shall not be "refused for filing . . . based on a requirement of a local rule of civil procedure or judicial administration" so long as they comply with the Pennsylvania Rules of Civil Procedure. Second, Rule 3021(a)(3) requires that "[t]he prothonotary shall immediately enter in the judgment index . . . a judgment, whether entered by the court, on order of court or on praecipe of a party." Third, in a section specifically titled "Arbitration," Rule 1307(c) provides that "[i]f no appeal is taken within thirty days after the entry of the award on the docket, the prothonotary on praecipe shall enter judgment on the award."

Over the next decade, the case went back and forth between the Court of Common Pleas and the Commonwealth Court. Ultimately, in 2017, the Commonwealth Court held that all court orders entered in the Patterson Action, other than the order confirming the arbitration award and the arbitration award itself, were entered in violation of the Deference Rule, which requires courts not to intervene in ecclesiastical questions. Patterson v. Shelton, 175 A.3d 442, 449-50 (Pa. Commw. Ct. 2017).[4] As a result, the arbitration award and the "orders, dated July 10 and 20, 2006, October 12, 2006, and April 17, 2007, collectively represent[ed] the last valid judgments" in the Patterson Action. Id. at 450 & n.7; App. 759.

Patterson obtained a writ of possession for the Church's headquarters, and the Sheriff posted an eviction notice. The Commonwealth Court initially stayed execution of the writ, but the parties represent that the stay was lifted.

After the stay was lifted, the Church and Corporation sued Patterson in the United States District Court for the Eastern District of Pennsylvania to prevent the taking of Church property. They asserted that, because they were not parties to the Patterson Action, "Patterson's effort to execute on the judgment from the Patterson Action against the Church Corporation . . . [violates] . . . due process and First Amendment rights of the Church and Church Corporation," as the Church would be forced to accept Patterson's leadership and control. App. 941, 961. The District Court granted their motion for a

---

[4] The Commonwealth Court concluded that the arbitration was the result of the parties' private agreement and was not subject to the Deference Rule. Patterson, 175 A.3d at 450.

preliminary injunction and ordered both Patterson and the Sheriff not to "attempt to take control of the Church or . . . Corporation," including its property" or "prohibit . . . Shelton from acting as General Overseer and spiritual leader of the Church." App. 3-4 (D. Ct. Order); see Trs. of Gen. Assembly of Lord Jesus Christ of Apostolic Faith, Inc. v. Patterson, 527 F. Supp. 3d 722 (E.D. Pa. 2021).

Patterson appeals, arguing that (1) the District Court lacked subject matter jurisdiction under Rooker-Feldman, and (2) collateral estoppel bars the Church and Corporation from relitigating issues decided by the state courts.

## II[5]

### A

The Rooker-Feldman doctrine prohibits a district court from exercising subject matter jurisdiction in the limited circumstances where "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state court judgments." Great W. Mining & Min. Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (quotation marks omitted).

The first element requires us to examine the District Court's conclusion that the Church and Corporation were not parties, and hence not "state-court losers," in the

---

[5] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, even though Patterson contends that it lacked subject matter jurisdiction under the Rooker-Feldman doctrine. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

Patterson Action. Great W. Mining, 615 F.3d at 164. We review the District Court's findings for clear error. See Vento v. Dir. of V.I. Bureau of Internal Revenue, 715 F.3d 455, 468 (3d Cir. 2013).

The District Court exhaustively reviewed the record and made findings that were well supported. In short, the record shows that the Church and Corporation were not parties because: (1) the Patterson Action complaint did not name either the Church or Corporation as parties and Pa. R.C.P. 1018 states that the "caption of a complaint shall set forth . . . the names of all the parties"; (2) the counterclaims purportedly asserted by Shelton "on behalf of the Church and the . . . Corporation,"[6] were filed without authorization, D. Ct. ECF No. 29 at 129:2-11 ("If you're asking me that these are claims brought by the Church, the answer is no."), and, in any event, under Pa. R.C.P. 1031(a), the claims were impermissible because counterclaims can only be filed by a party, Zion v. Sentry Safety Control Corp., 258 F.2d 31, 34 (3d Cir. 1958) (en banc) (holding a defendant sued in his individual capacity could not assert counterclaims on behalf of his partnership); (3) the Court of Common Pleas recognized that a representative of the Church Corporation could not verify Shelton's answers to the state-court complaint because the answers had to be verified by a party; (4) the arbitration agreement was

---

[6] Patterson cites Rule 2002 in support of his argument that the filing of counterclaims shows that the Church and Corporation were parties. Rule 2002 provides that a plaintiff may sue "in his or her own name without joining as plaintiff . . . any person beneficially interested when such plaintiff . . . is acting in a fiduciary or representative capacity, which capacity is disclosed in the caption and in the plaintiff's initial pleading." Pa. R.C.P. 2002(b)(1). This rule therefore does not help him as it applies only to pleadings by plaintiffs.

between only Patterson and Shelton; (5) the arbitrator acknowledged that the Church and Corporation were not parties in its May 2006 supplemental opinion; (6) the state court denied the Church's and Corporation's effort to enter a limited appearance to challenge the arbitration award; and(6) a court reviewing the receivership stated that the Church and Corporation were not named parties, GlassRatner Mgmt. & Realty Advisors, LLC v. Gen. Assembly of the Church of the Lord Jesus Christ of the Apostolic Faith, Inc., Nos. 1144 C.D. 2006, 1568 C.D. 2006, 2008 WL 9398600, at *1 (Pa. Commw. Ct. Jan. 31, 2008).. .[7]

Patterson's strongest argument that the Church and Corporation were parties is that the prothonotary entered judgment against the Church and Corporation on October 12, 2006. The judgment, however, was based upon a praecipe Patterson's counsel authored and the prothonotary accepted without further inquiry, in accordance with the Pennsylvania rules. Moreover, the October 12, 2006 praecipe conflicts with the July 20, 2006 praecipe requesting entry of judgment against only Shelton. The entry of this conflicting praecipe is insufficient to establish the Church and Corporation were parties to the Patterson Action under Rooker-Feldman. This one order, authored by Patterson's counsel and entered as a matter of course without bona fide court review, cannot overcome the mountain of evidence, discussed previously, that shows the Church and Corporation were not parties. Furthermore, Patterson has failed to take the necessary

---

[7] Patterson also admitted that he could not sue the Church and only sought an accounting from the named parties, not the Corporation.

9

additional step of showing that the entry of a judgment can transform nonparties into parties. Pa. R.C.P. 425(a) sets forth how additional parties must be added to an action: "Original process shall be served upon an additional defendant who is not already a party to the action in the same manner as if he or she were an original defendant." Pa. R.C.P. 425(a). The Church and Corporation were never served with process. Based upon these facts, the District Court did not clearly err in finding that the Church and Corporation were not parties to the Patterson Action. Because they were not parties, they could not have been state-court losers, and, thus, the Rooker-Feldman doctrine did not deprive the District Court of jurisdiction to hear this case.[8]

B

The District Court also did not err in finding that, for collateral estoppel purposes, the Church and Corporation were not parties or in privity with the parties in the Patterson Action. Collateral estoppel prevents parties from litigating the same issue again when a

---

[8] To the extent Rooker-Feldman also applies to a narrow class of privies, the Church and Corporation would not qualify as being in privity with Shelton. In Lance v. Dennis, 546 U.S. 459, 465 (2006), the Supreme Court left open the possibility that parties "not named in an earlier state proceeding" may still be subject to Rooker-Feldman under very limited circumstances and gave the example of an estate taking "a de facto appeal in a district court of an earlier state decision involving the decedent." Id. at 466 n.2; see also Mo's Express, LLC v. Sopkin, 441 F.3d 1229, 1235-36 (10th Cir. 2006) ("Although Lance leaves room for an extremely limited form of privity analysis . . . it broadly rejects the use of preclusion principles in determining the scope of Rooker-Feldman."). In examining this narrow category, we recently held that a joint tenancy is insufficient to qualify as being in privity. See Vuyanich v. Smithton Borough, 5 F.4th 379, 388 (3d Cir. 2021). The relationship here between the state-court loser, Shelton, and the federal plaintiffs, the Church and Corporation, is more distant than that of estates and decedents or joint tenants. For example, there is no evidence in the record that the Church and Corporation are legal successors to Shelton, as in the case of a decedent-estate relationship.

10

"court of competent jurisdiction has already adjudicated the issue on its merits." Witkowski v. Welch, 173 F.3d 192, 198 (3d Cir. 1999). Because "state court decisions [are] given the same preclusive effect in federal court they would be given in the courts of the rendering state," we apply Pennsylvania law to determine the preclusive effect of the rulings in the Patterson Action. Del. River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 573 (3d Cir. 2002).

Under Pennsylvania law, collateral estoppel bars re-litigation of an issue where, among other things, the party against whom collateral estoppel is asserted was a party to the prior action or in privity with a party to the prior action. Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 310 (3d Cir. 2009). The party asserting preclusion bears the burden of proving these elements. Greenway Ctr., Inc. v. Essex Ins. Co., 475 F.3d 139, 147 (3d Cir. 2007).

As explained above, the Church and Corporation were not parties to the Patterson Action. Thus, the only remaining question is whether Patterson has shown that the Church and Corporation were in privity with Shelton. Nationwide, 571 F.3d at 310. Although privity for collateral estoppel purposes is broader than under Rooker-Feldman, "[t]he scope of privity . . . remains small." Id. at 311.

We use the following categories to determine whether a nonparty is in privity with a party to the prior litigation:

11

(1) the nonparty agrees to be bound by the determination of issues in an action between others; (2) a substantive legal relationship—i.e. traditional privity—exists that binds the nonparty; (3) the nonparty was adequately represented by someone with the same interests who [wa]s a party; (4) the nonparty assumes control over the litigation in which the judgment is rendered; (5) the nonparty attempts to bring suit as the designated representative of someone who was a party in the prior litigation; and (6) the nonparty falls under a special statutory scheme that expressly foreclose[es] successive litigation by nonlitigants.

Id. at 312-13 (alterations in original) (quotation marks omitted). The "traditional privity" and "control" categories are the only ones that may possibly apply here and so we examine each in turn.[9]

Traditional privity requires "a prior legal or representative relationship between a party to the prior action and the nonparty" such that "there is such an identification of interest between the two as to represent the same legal right." Id. at 311-12. As General Overseer, Shelton has unfettered authority to "conduct all negotiations and closings in the purchasing [and] selling . . . of any property real or personal for the [Corporation]." App. 93-94. On the one hand, this indicates that Shelton was a fiduciary to the Corporation and thus had legal obligations to it. On the other hand, the authority to make secular decisions belonged to the Trustees who, like Shelton, each had a single vote, so Shelton could not unilaterally act without a majority of the Board. Moreover, Shelton was sued

---

[9] Categories (1), (5), and (6) do not apply to this case because the Church and Corporation did not agree to be bound by the Patterson Action, the Church and Corporation are not designative representatives of Shelton, and no relevant statutory scheme exists. In addition, category (3) does not apply because the complaint in the Patterson Action alleged that Shelton stole from Church and Corporation, and thus he could not have adequately represented the Church's and Corporation's interests as they were the victims of his alleged theft.

12

in his individual capacity for stealing from the Church, and thus he was accused of acting against the Church's and Corporation's interests.

Patterson also has not shown that the Church and Corporation had the sort of "control" that would make them privies for collateral estoppel purposes. Control in this context refers to control of the litigation. Marshak v. Treadwell, 240 F.3d 184, 195 (3d Cir. 2001) (citation and quotation marks omitted); see, e.g., Charter Oak Fire Ins. Co. v. Sumitomo Marine & Fire Ins. Co., 750 F.2d 267, 271 (3d Cir. 1984) (holding that an insurer who retained counsel and managed the defendant's litigation strategy had control for purposes of res judicata). Other than noting that the Church and Corporation paid Shelton's legal fees, Patterson does not provide any evidence that they controlled Shelton's litigation strategy. The District Court, therefore, did not clearly err in concluding that the Church and Corporation were neither parties nor privies for collateral estoppel purposes.

## III

For the foregoing reasons, we will affirm.